Santos v Condo 124 LLC (2018 NY Slip Op 03799)





Santos v Condo 124 LLC


2018 NY Slip Op 03799


Decided on May 29, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 29, 2018

Friedman, J.P., Andrias, Singh, Moulton, JJ.


5976 110582/10

[*1] Franklin Santos, et al., Plaintiffs-Respondents-Appellants,
v
Condo 124 LLC, et al., Defendants-Respondents, Construction & Realty Safety Group, Inc., Defendant-Appellant-Respondent.


Abrams, Gorelick, Friedman & Jacobson, LLP, New York (Barry Jacobs of counsel), for appellant-respondent.
Gorayeb & Associates, P.C., New York (John M. Shaw of counsel), for respondents-appellants.
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., New York (Anthony Broccolo of counsel), for respondents.



Order, Supreme Court, New York County (Lucy Billings, J.), entered November 28, 2016, which, insofar as appealed from as limited by the briefs, denied defendant Construction & Realty Safety Group, Inc.'s (CRSG) motion for summary judgment dismissing the Labor Law § 240(1) and § 241(6) claims as against it on the grounds that it was not a statutory agent under the statutes, denied plaintiffs' cross motion for partial summary judgment on the Labor Law § 240(1) claim, and granted defendants' motions for summary judgment dismissing the Labor Law § 200 and common-law negligence claims and the Labor Law § 241(6) claim predicated on Industrial Code (12 NYCRR) §§ 23-1.7(b)(1)(ii), (iii), 23-5.1(j), and 23-5.3(e), affirmed, without costs.
Plaintiff Franklin Santos alleges that on July 28, 2010, he was injured when he fell from a scaffold at a construction site. Under construction was a mixed hotel and condominium building. Defendants Condo 124 LLC, 124 Longview Owners, LLC, and Ramius, LLC were the owners of the building being constructed (the owners). Defendant Ross & Associates, LLC (Ross) was the construction manager on the project, which retained CRSG as site safety consultant. Santos worked as a mason's helper for nonparty subcontractor Bayport Construction (Bayport). Bayport erected the scaffolds in order to perform its masonry work.
By amended verified complaint, plaintiffs asserted causes of action for common-law negligence, violations of Labor Law §§ 200, 240(1), and 241(6), and a derivative claim on behalf of Santos's wife. Plaintiffs alleged that Santos's injuries were the result of defendants' failure to maintain a safe work site, particularly the failure to provide him with adequate scaffolding. They alleged that defendants violated, inter alia, Industrial Code §§ 23-1.5, 23-1.7, 23-1.15, 23-1.16, 23-1.17, 23-5.1, and 23-5.3.
During his deposition, Santos testified that he was responsible for carrying materials such as "[c]ement, blocks, [and] marble." On the date of the accident, Santos carried marble down to the cellar, before bringing it upstairs. The marble was brought to the cellar at first because the scaffolding had not yet been set up.
Santos carried the marble up the metal staircase inside a tower scaffold on site. The marble weighed 400 to 500 pounds. The scaffold's steps were three feet wide, and reached a height of eight or nine feet. The scaffold was 9 to 10 feet off the ground. The accident occurred when Santos and a coworker known only as Giovanni carried a block of marble up the scaffolding. Santos was walking backwards. Giovanni faced him. Santos states that once he got [*2]"upstairs" he "step[ped] back" and went "completely downwards." Santos alleges that he fell 10 to 12 feet onto the pipes of the scaffold's lower level. At the time of the accident, Santos was holding the marble from underneath. He did not recall what happened to the marble after he fell. Santos did not have a back brace, harness, or other safety equipment at the time.
The scaffold floor was made out of wooden planks. When Santos fell, he alleges that the floor was missing some of the planks, which caused the accident. According to Santos, it was evident that Bayport's employees, who erected the scaffold that morning, did not install all the necessary planking. It is undisputed that Santos only received instructions from other Bayport employees.
Sanjeev Kumar worked for Bayport as a supervisor at the time of the accident. Bayport employees were required to inspect all scaffolds daily. The scaffold platform was comprised of about six wooden planks. Kumar knew Carmine DeSimone as a safety inspector, but did not know for whom he worked. DeSimone never talked with Kumar about the scaffolding. Kumar did not receive any reports about defects on the scaffold prior to the accident. Kumar was told by a Bayport employee "Franklin [Santos] fell from [the] scaffold." Kumar found Santos at the crossbars that are on the side of the platform. After the accident, Kumar inspected the scaffold and saw six planks on the platform from which plaintiff fell. There was no space between the stairs and the platform and he found nothing wrong with the scaffold. Santos and Giovanni were not wearing safety harnesses when the accident happened.
Dirk McRae was a project manager for Ross and was responsible for safety at the site. CRSG was the site's safety manager. McRae talked with DeSimone most days at the work site. Bayport was the entity on site responsible for scaffolds. McRae observed the scaffold on the day of the accident, saw no net under it, and no safety lines above it. There was no general contractor on the site distinct from Ross. If McRae saw an unsafe condition he had the authority to stop work.
DeSimone, CRSG's safety consultant at the site, testified that Ross hired CRSG to "look over the men to make sure everybody is working safe . . . [and ensure the] safety of the job site." After the accident, DeSimone observed the scaffold from which Santos fell. It was in good condition, "normal scaffolding, planks were right." None of the planks were splintered, broken, or appeared out of order.
DeSimone, as safety manager, could only stop work at the site if there was an immediate danger. If he saw unsafe practices he would alert the worker to desist. "If [he] s[aw] somebody in immediate danger, [he] would stop them from working and tell their supervisor," but could not simply "stop the project or workers from working." DeSimone could not alter the "means or methods" of the worker's employer. If he was not happy with a supervisor's response, DeSimone would file a report with Ross. In his safety manager log, DeSimone noted, on July 7, 2010, that there was an "[i]nadequate scaffold" at the site. DeSimone noted that the scaffold did not have "toe boards" or "cross bars".
CRSG moved for summary judgment arguing that it was not a "statutory agent" for purposes of the Labor Law. Ross and the owners moved for summary judgment dismissing the complaint arguing that the section 240(1) claim should be dismissed because there was no evidence that Santos fell due to a defect in the scaffold in that the claim that he fell due to missing planks was belied by the record. Ross argued that the complaint should be dismissed as against it because it was not a general contractor, and it did not provide safety equipment to or control the means and methods of Santos's work.
Ross and the owners also moved for summary judgment on the section 241(6) claim arguing that plaintiffs did not specify in the bill of particulars which sections of the Industrial Code were violated. Finally, Ross and the owners moved for summary judgment on the common-law negligence and Labor Law § 200 claims arguing that Ross and the owners did not supervise Santos's work and did not have notice of any defect that caused Santos's fall. Plaintiffs' cross-moved for partial summary judgment on their Labor Law § 240(1) claim.
Supreme Court denied CRSG's motion for summary judgment and plaintiffs' cross motion for partial summary judgment. Supreme Court granted Ross's and the owners' motion for summary judgment on the section 241(6) claims predicated on Industrial Code §§ 23-[*3]1.7(b)(1)(ii) and (iii) and Industrial Code §§ 23-5.1(j), and 23-5.3(e) as inapplicable to the facts of the case. The court also dismissed the common-law negligence and section 200 claims because defendants did not have the requisite level of supervision or control over Santos's work, and did not have notice of the condition that caused the accident.
Supreme Court properly denied CRSG's motion for summary judgment. Labor Law §§ 240(1) and 241(6) impose absolute liability on "contractors and owners and their agents" for worker injuries on construction sites (see Russin v Louis N. Picciano & Scahill, P.C., Bethpage (of counsel), for & Son, 54 NY2d 311, 317 [1981]). CRSG, as site safety consultant, was neither an owner nor general contractor on the project. Thus, whether CRSG is subject to the Labor Law is dependant on whether it was an "agent" of the owners or Ross at the site.
To hold a defendant liable under the Labor Law as a "statutory agent" of either the owner or the general contractor, it must be shown that the defendant had the " authority to supervise and control'" the injury-producing work (Walls v Turner Constr. Co., 4 NY3d 861, 864 [2005], quoting Russin at 318; see Oliveri v City of New York, 146 AD3d 522, 522 [1st Dept 2017]). The determinative factor is whether the defendant had the right to exercise control over the work, not whether it actually exercised that right (see Bart v Universal Pictures, 277 AD2d 4, 6 [1st Dept 2000]). Where the owner or general contractor delegates to a third party the duty to conform to the requirements of the Labor Law, that third party becomes the statutory agent (see Walls, 4 NY3d at 863-864).
The authority of DeSimone, as an employee of CRSG, to stop work in the event of unsafe practices raises an issue of fact as to whether CRSG is a "statutory agent" for purposes of the Labor Law (compare Barreto v Metropolitan Transp. Auth., 25 NY3d 426, 434 [2015] [defendant was "statutory agent" where, inter alia, it "had the authority to stop plaintiff from working in the area near" a dangerous condition]; with Lamar v Hill Intl., Inc., 153 AD3d 685, 686 [2d Dept 2017] [defendants not "statutory agents" where, inter alia, they could only make recommendations for corrective actions to unsafe practice and "stop work only in the event of an emergency"]).
Supreme Court correctly denied summary judgment in favor of plaintiff on the Labor Law § 240(1) claim. Labor Law § 240(1) imposes absolute liability on building owners, contractors, and their agents whose failure to provide adequate protection to workers employed on a construction site proximately causes injury to a worker (see Wilinski v 334 E. 92nd Hous. Devl. Fund Corp., 18 NY3d 1, 7 [2011]). To establish liability under section 240(1), a plaintiff must show that the statute was violated, and that the violation was a proximate cause of the injury (see Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39 [2004]; Blake v Neighborhood Hous. Serv. of N.Y. City, 1 NY3d 280, 287-288 [2003]). Of course, "the fact that a worker falls at a construction side, in itself, does not establish a violation of Labor Law § 240(1)" (O'Brien v Port Auth. of N.Y. & N.J., 29 NY3d 27, 33 [2017]).
Santos's testimony that he was not provided with any safety devices that would have prevented him from falling through a hole in the scaffolding platform that was created by a missing wooden plank sufficiently shows that section 240(1) was violated (see e.g. Susko v 337 Greenwich LLC, 103 AD3d 434 [1st Dept 2013]; Ritzer v 6 E. 43rd St. Corp., 57 AD3d 412 [1st Dept 2008]; Magee v 438 E. 117th St. LLC, 56 AD3d 376 [1st Dept 2008]).
However, defendants raised an issue of fact in opposition to plaintiffs' cross motion through testimony that directly contradicted Santos's account of the accident. Kumar and DeSimone testified that immediately following the accident, there was nothing about the wooden planking that appeared out of the ordinary. Kumar noted that all six planks were present on the platform floor and that there was no gap between the scaffold's stairs and the platform. DeSimone testified that, after the accident, the scaffold was in good condition, the "planks were [al]right" and did not appear broken or otherwise out of order.
We disagree with the dissent's conclusion that the record establishes that Santos fell from a significant elevation differential after he stepped from the stairs to the scaffold platform. Building upon this erroneous premise, the dissent concludes that plaintiffs are entitled to summary judgment because the safety devices provided to Santos were inadequate for the task of hauling the heavy marble up the scaffold.
However, the record does not support the dissent's conclusions. Kumar testified that after the accident he found Santos against the crossbars on the side of the scaffolding. Additionally, McRae testified that he was told by DeSimone that Santos fell on the scaffold and that he tripped and landed on the crossbracing. As the dissent notes, DeSimone testified that Santos fell on the planks of the scaffold and hurt his back. DeSimone also testified that he was told by Giovanni that Santos "fell on top of the stairs."
These depositions sufficiently raise an issue of fact in opposition to plaintiffs' cross motion by raising conflicting versions of the accident (see Perez v Folio House, Inc., 123 AD3d 519 [1st Dept 2014]; Piazza v CRP/RAR III Parcel J, LP, 103 AD3d 580, 581 [1st Dept 2013]). Insofar as McRae's and DeSimone's testimony is hearsay, it may be considered in opposition to plaintiffs' cross motion for summary judgment because it is not the only evidence submitted in opposition (City of New York v Catlin Specialty Ins. Co., 158 AD3d 586, 587 [1st Dept 2018]; Fountain v Ferrara, 118 AD3d 416 [1st Dept 2010]). Both Kumar and DeSimone maintain that their inspection of the scaffold after the accident did not reveal any defects in the wooden planks that formed the platform floor.
We also note that there appear to be inconsistencies within Santos's own deposition and affidavit submitted in support of his cross motion for summary judgment. First, Santos testified in his deposition that as he was carrying the marble up the stairs, he stepped back on to the platform and he fell completely downwards due to two missing plank boards closest to the staircase. Later he testified that he fell backwards and hit his back against the pipes of the scaffold and then fell 10-12 feet. This inconsistency also exists in his affidavit where Santos states that he fell through an opening along the sides of the platform and, alternatively, that he fell immediately after stepping on to the platform due to the missing wooden planks. The inconsistency in Santos's own testimony raises an issue of fact as to how the accident occurred. When viewed in conjunction with the testimony of McRae, DeSimone and Kumar, defendants have sufficiently raised an issue of fact as to the claim that Santos fell 10-12 feet off of the scaffolding.
As there is an issue of fact, both the motion and cross motion for summary judgment on the Labor Law § 240(1) claim were properly denied (see Perez, 123 AD3d at 519; Piazza, 103 AD3d at 581).
The motion court also properly dismissed the section 241(6) claims predicated on 12 NYCRR 23-1.7(b) as inapplicable to the facts of the case because the hole into which Santos fell was not required by the work being performed, and nothing about Santos's work required him to be near the edge of an opening (see Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 450-451 [1st Dept 2013]; Harris v Hueber-Breuer Constr. Co., Inc., 67 AD3d 1351, 1353 [4th Dept 2009]).
The court also properly dismissed the section 241(6) claim predicated on 12 NYCRR 23-5.1(j) and 23-5.3(e) as inapplicable to the facts of this case because at no time did Santos claim that he was caused to fall due to inadequate railings. The dissent's conclusion to the contrary is not persuasive. Plaintiffs do not proffer any evidence, and Santos did not testify that the lack of railings caused the accident. Accordingly, violation of this provision could not have been a proximate cause of the accident (see Mouta v Essex Mkt. Dev. LLC, 106 AD3d 549, 550 [1st Dept 2013]; Ramirez v Metropolitan Transp. Auth., 106 AD3d 799, 801 [2d Dept 2013]).
The motion court also properly dismissed the common-law negligence and Labor Law § 200 claims. To the extent these claims are predicated on a dangerous or hazardous condition (see Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 144 [1st Dept 2012]), defendants did not create the hole into which Santos fell, nor did they have actual or constructive knowledge of its existence. The uncontroverted testimony established that the scaffold from which Santos fell was inspected every day, and at no time was a hole in the wooden platform discovered (Vazquez v Takara Condominium, 145 AD3d 627, 628 [1st Dept 2016]). To the extent these claims are predicated on the means and methods of the work, there is no evidence that defendants exercised any control over the choices made by Santos's employer.
All concur except Moulton, J. who dissents in part in a [*4]memorandum as follows:




MOULTON, J. (dissenting in part)


In my view, Supreme Court should have granted summary judgment to plaintiffs under Labor Law § 240(1) against defendants-respondents Condo 124 LLC, 124 Longview Owners, LLC and Ramius, LLC (owners) and Ross & Associates, LLC (construction manager). Additionally, Supreme Court should not have dismissed plaintiffs' Labor Law § 241(6) claim predicated on 12 NYCRR 23-5.1(j) and 23-5.3(e), pertaining to scaffold safety railings.
It is undisputed that plaintiff Franklin Santos was instructed by his supervisor, Sanjeev Kumar, to manually carry a piece of cast stone weighing several hundred pounds up a tower scaffold with his coworker. Santos walked backwards up the scaffold stairs, holding the stone with both hands, while facing his coworker, Giovanni, who was below him walking forwards. The record establishes that Santos fell from a significant elevation differential. Santos testified that he fell 10-12 feet after he stepped backwards from the top of the stairs onto the scaffold platform and "just went completely downwards." Santos testified that the distance between the top of the stairs to the bottom was approximately 9-10 feet, but he fell approximately 12 feet from where Giovanni stood because he fell lower than ground level, near the basement. After hearing that Santos "fell from the scaffold . . . taking the stones up" Kumar found Santos hanging off the cross bars on the first floor level. Kumar testified that the first floor platform was six feet above the first floor level. Giovanni (the sole witness to the accident other than Santos), who did not speak English very well, only told Kumar that Santos "fell." Owners and construction manager did not submit an affidavit from Giovanni in opposition to plaintiffs' cross motion for summary judgment under Labor Law § 240(1). Carmine DeSimone, the site safety manager for CRSG, estimated that the first platform was about six feet above ground level.
Santos attributed the accident to "missing wood" despite testifying that he did not see what caused him to fall [FN1]. He asserted at his deposition that "I was looking in front of me. I couldn't look backwards. I couldn't because as I'm walking backwards, I couldn't look backwards." In his affidavit in support of his cross motion for summary judgment, Santos explained, "Because I was directed to walk up the scaffold steps backwards manually carrying this 400-500 pound load, I did not know that there was an opening/gap along the area of the platform immediately next to the top of the steps that I climbed up to. No one warned me or told me that there was this opening/gap." Seizing on Santos's testimony concerning "missing wood" owners and construction manager assert that Supreme Court correctly found issues of fact for trial because Kumar and DeSimone testified that they inspected the scaffold and saw no missing wood on the platform. Kumar testified that he observed "six planks" and "no space" between "the end of the step and the beginning of the planks." DeSimone testified that both before and after the accident he walked the entire scaffold, the planks were not splintered or broken, and nothing seemed out of order.
Plaintiffs were entitled to summary judgment under Labor Law § 240 (1) because the safety device that Santos used (the tower scaffold) was inadequate for the task that he was instructed to perform (see e.g. Gericitano v Brookfield Props. OLP Co. LLC, 157 AD3d 622 [1st [*5]Dept 2018]; Cronin v New York City Tr. Auth., 143 AD3d 419 [1st Dept 2016]; Harris v 170 E. End Ave., LLC, 71 AD3d 408 [1st Dept 2010], lv dismissed 15 NY3d 911 [2003]).
Even if the tower scaffold was not "missing wood," summary judgment should have been granted to plaintiffs because "there is no view of the evidence at trial to support a finding that the absence of safety devices was not a proximate cause of the injuries" (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 524 [1985]; see also Vergara v SS 133 W. 21, LLC, 21 AD3d 279, 280 [1st Dept 2005] ["It does not matter whether plaintiff's fall was the result of the scaffold falling over, or its tipping, or was due to plaintiff mis-stepping off its side"]; John v Baharestani, 281 AD2d 114, 118 [1st Dept 2001] [while the plaintiff was not sure whether the makeshift scaffold "wooden plank broke or moved, it is undisputed that there were no safety devices or belts on either the plank or the pallet"]).[FN2]
The Labor Law imposes a nondelegable duty upon owners and general contractors, and their agents, to provide safety devices necessary to protect workers from the risks inherent in elevated work sites (id. at 117-118). The availability of a particular safety device will not preclude liability "if the device alone is not sufficient to provide safety without the use of additional precautionary devices or measures" (Nimirovski v Vornado Realty Trust Co., 29 AD3d 762, 762 [2d Dept 2006] [internal quotation marks omitted]). Here, even if there was no gap in the planking of the scaffold platform, plaintiffs have established their entitlement to judgment under Labor Law § 240(1) because Santos's injuries were "the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]), and the safety device provided was not adequate for the task that he was instructed to perform (see e.g. Gericitano, 157 AD3d at 622; Cronin 143 AD3d at 419; Harris, 71 AD3d at 408-409).
The determination of the type of protective device required for a particular job turns on the foreseeable risks of harm presented by the nature of the work being performed (see Harris at 408-409 [Labor Law § 240(1) violation established where an additional safety device was needed in order to prevent a foreseeable accident]). Here, there was a foreseeable risk of Santos falling due to the weight of the heavy object that he was instructed to hand-carry backwards up the scaffold stairs. Further, Santos's hands were not free to steady himself and he could not see where he was walking. Where the safety device provided is not adequate for the task assigned, summary judgment is not defeated by arguing that there is no defect in the device that was actually provided (see Arnaud v 140 Edgecomb LLC, 83 AD3d 507, 508 [1st Dept 2011] ["[n]or does the fact that plaintiff did not point to any particular defect in the pulley defeat his entitlement to summary judgment . . . Thus, it is not necessary that plaintiff establish that the pulley was defective, only that he was not given proper protection"]). Owners and construction manager do not provide any explanation of how Santos could have fallen from a significant elevation differential which would be unrelated to a Labor Law § 240(1) violation (e.g., they do not argue that Santos was the sole proximate cause of his accident).
This case is distinguishable from Perez v Folio House, Inc., 123 AD3d 519 [1st Dept 2014] and Piazza v CRP/RAR III Parcel J, LP, 103 AD3d 580 [1st Dept 2013]), cited by both Supreme Court and the majority. In those cases, issues of fact were raised in light of the conflicting versions of the accident, with the defendant's version demonstrating that the plaintiff tripped and fell on either the same level of a scaffold platform (Perez, 123 AD3d at 519-520) or, on the ground level (Piazza, 103 AD3d at 581). Here, the only competent evidence shows that [*6]Santos fell from a significant elevation differential.[FN3]
The majority implies, based on DeSimone's hearsay statements, that Santos may have not have fallen from a significant elevation differential (i.e., Santos fell on the same level of the platform). However, I would not consider DeSimone's testimony because defendants failed to proffer a reasonable excuse for their failure to tender an affidavit from Giovanni, the purported source of the information that Santos fell on the same level (see Oddo v Edo Mar. Air, 34 AD3d 774, 775 [2d Dept 2006][hearsay statement made by the injured plaintiff's coworker could not be used to raise a triable issue of fact where the plaintiffs failed to proffer a reasonable excuse for their failure to tender the evidence in admissible form]). In any event the hearsay testimony was unreliable as Santos, Kumar and McRae all testified that Santos landed on the cross bars - - not on the platform, as DeSimone maintained.[FN4]
Accordingly, I would modify Supreme Court's order and grant plaintiffs summary judgment under Labor Law § 240(1) against owners and construction manager.
I would also reinstate plaintiffs' Labor Law § 241(6) claim predicated on 12 NYCRR 23-5.1(j) and 23-5.3(e) because owners and construction manager failed to present affirmative evidence demonstrating that the lack of safety railings was not the proximate cause of the accident, and merely pointed to the equivocal evidence and the gaps in plaintiffs' proof (see Koulermos v A.O. Smith Water Prods., 137 AD3d 575 [1st Dept 2016]). At his deposition Santos did not testify that lack of railings caused his accident. However, he did submit an affidavit in support of his cross motion for summary judgment which attributed his accident to the lack of railings, among other things [FN5]. In any event, it was defendants' burden, on summary judgment, to proffer evidence that the lack of railings did not contribute to Santos's accident [*7](e.g., by providing testimony that the scaffold in question had the requisite railings). In both Mouta v Essex Mkt. Dev. LLC (106 AD3d 549 [1st Dept 2013]) and Ramirez v Metropolitan Transp. Auth. (106 AD3d 799 [2d Dept 2013]), cited by the majority, the safety railings regulations were irrelevant because the cause of both accidents was known (a fall through planking) and the plaintiffs were entitled to summary judgment under Labor Law § 240(1). Here, the precise cause of Santos's fall is unknown. If Santos is not entitled to summary judgment under Labor Law § 240(1), then, at a minimum, he
should be entitled to prove at trial that the lack of railings caused his injuries, where defendants have submitted no evidence to the contrary.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 29, 2018
CLERK



Footnotes

Footnote 1:Santos testified through an interpreter that "[t]he scaffold was wood. Yes, and because of that, well, when I stepped back, it didn't have the wood. It just had one wood. When I stepped back with the piece of marble, that's why I went backward." He further explained that "it looks like they forgot to put that wood." At his deposition, Santos was shown a photograph of a scaffold for identification. The scaffold platform in the photograph does not show any gaps in the planks. Santos stated, "The difference is that what you see there, there are three pieces of wood that are across there. But back then there was only one piece of wood."

Footnote 2:Both DeSimone and Kumar testified that everyone who worked on the scaffold had to wear a harness. Kumar testified that neither Santos nor Giovanni was wearing a safety harness when the accident happened. Santos also testified that he did not complain about site safety (e.g., the lack of a harness) because he did not think he had a right to do so, and was afraid that he would be fired.

Footnote 3:Citing the hearsay testimony of DeSimone, owners and construction manager appear to suggest that Santos fell on the platform. DeSimone testified that Giovanni told him that he and Santos "were carrying up the stone and as they got to the top of the stairs on the scaffold he lost his grip somehow, and he dropped the stone and he went back and fell on his butt, his rear end . . .[o]n the platform of the scaffold." DeSimone's accident report states the accident happened when Santos was "carrying stone up the ladder to the Scaffold with his partner Giovanni when he let the stone go because it was too heavy and he fell on the planks of the scaffold and hurt his back." Even if this hearsay evidence could be considered, DeSimone conceded that Giovanni did not tell him "where the plaintiff's rear end hit." Thus, Giovanni's statement that Santos "fell on his butt" is not inconsistent with a fall from the scaffold platform to the cross bars below.

Footnote 4:Any inconsistency within Santos's own deposition and affidavit as to precisely how the accident occurred is of no import where the record establishes that he fell from a significant elevation differential after stepping backwards and falling into thin air and where the safety device that Santos was provided (the tower scaffold) was inadequate for the task that he was instructed to perform. 

Footnote 5:In that affidavit, Santos attached a photograph of a scaffold that clearly did not have any safety railings. He stated that the photograph was a fair and accurate picture of the scaffold from which he fell, except for the planking.